IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICIA DUKERT, Individually
and as Personal Representative of the
Estate of Clare William Dukert,

       Plaintiff,

      v.                                                          Civil No. 14-506 WJ/WPL

UNITED STATES OF AMERICA,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS CLAIMS NOT RAISED IN**
**PLAINTIFF'S TORT CLAIMS NOTICE FOR LACK OF JURISDICTION**

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Claims Not Raised in her Tort Claims Notice for Lack of Jurisdiction, filed September 28, 2015 **(Doc. 48)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken and, accordingly, is granted.

BACKGROUND

This is a wrongful death action as a result of alleged medical malpractice. Plaintiff Patricia Dukert ("Plaintiff" or "Mrs. Dukert") asserts claims against the United States of America ("United States") under the Federal Tort Claims Act, 28 U.S.C. §§1346(b) and 2671 et seq. ("FTCA"). Plaintiff alleges that on February 15, 2013, the colonoscopy procedure performed on her husband, Clare William Dukert ("Mr. Dukert") was not properly performed and that the care he received fell below the required standard of care. Consequently, Mr. Dukert underwent an inappropriate procedure at the Veteran's Administration ("VA") Hospital in Albuquerque, New Mexico, and suffered a perforation of his colon. Plaintiff further alleges Mr. Dukert experienced

serious complications as a result of the Defendant's negligence resulting in his death in August, 2013. Plaintiff claims that the physicians who cared for Mr. Dukert knew or should have known about his history of recurrent polyps and multiple biopsies which had been performed in the same section of his colon and that the VA physicians should have treated Mr. Dukert surgically instead of attempting an additional biopsy of the polyps.

Defendant denies any negligence and contends that Mr. Dukert had undergone a colon resection in 2010 for colon cancer and according to his wife, never fully recovered from that surgery. After the 2010 resection surgery, the VA provided regular endoscopic surveillance to follow up a troublesome lesion. Defendant claims that it was Mr. Dukert's desire to undergo surveillance colonoscopies because he did not want to have another abdominal surgery.

## DISCUSSION

Defendant seeks dismissal under Fed.R.Civ.P.12(b)(1) for lack of subject matter jurisdiction.

### I. Time Limitations Under the FTCA

Some discussion of time limitations set forth under the FTCA is necessary here, although Defendant's argument does not specifically challenge the timeliness of Plaintiff's complaint. To start with, the FTCA provides that "an action shall not be instituted upon a claim against the United States for money damages" unless the claimant first exhausts his or her administrative remedies. 28 U.S.C. § 2675(a). Section 2675(a) requires that the claimant present the claim to the appropriate federal agency by certified or registered mail, and that the failure of the agency to make a final disposition of a claim within six months after it is filed is deemed to be a final denial of the claim.

Other time limitations are contained in § 2401(a) and (b).  Under subsection (a), civil actions against the United States are barred unless the complaint is filed "within six years after the right of action first accrues."  Subsection (b) dictates that tort claims are forever barred unless the administrative claim is presented to the agency within two years after such claim accrues, or unless the action is begun within six months after the notice of final denial by the agency.   In a recent decision, *U.S. v. Kwai Fun Wong*, the United States Supreme Court held that the FTCA's time limitations under §2401(b) were non-jurisdictional and were subject to equitable tolling. 135 S.Ct. 1625 (2015).  Because *Wong* addressed only the time limitations set forth in subsection (b), Defendant appears to be correct that the time limitations under §2675(a) remain a "jurisdictional prerequisite."  Doc. 48 at 5.  *See Estate of Trentadue v. U.S.*, 397 F.3d 840, 852 (10th Cir. 2005) ("Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed.") (quoting *Bradley v. U.S. ex rel. Veterans Admin.,* 951 F.2d 268, 270 (10th Cir. 1991)).

As previously mentioned, Defendant does not argue that Plaintiff's filing of her original claim is untimely.  Plaintiff's Tort Claim Notice, or form "SF-95," was received by the United States Department of Veterans Affairs ("DVA") on September 30, 2013.  The DVA denied Plaintiff's claim by certified letter on March 20, 2014, which then gave her the right to file a lawsuit against the United States within six months from that date—which Plaintiff did, filing the instant lawsuit on May 27, 2014.  Defendant contends, however, that the lawsuit that was filed significantly expanded her administrative claims to include claims which were never presented to the agency and as a result have not been exhausted.

**II.     Notice**

Written notification to a federal agency under §2675 includes: (1) sufficient information for the agency to investigate the claims, and (2) a sum certain amount of damages sought. *Cizek v. U.S.*, 953 F.2d 1232, 1233 (10th Cir. 1992). Also, 28 C.F.R. § 14.2(a) provides that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 . . . accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." The language of an administrative claim must give due notice to the agency that it should investigate the possibility of particular conduct. *Estate of Trentadue*, 397 F.3d at 852. The notice must alert the agency of the facts and circumstances underlying a claim. *Id.* at 853. Whether a plaintiff's administrative claim is sufficient to meet the notice requirements of 28 USC § 2675(a) is a question of law. *Staggs v. U.S.*, 425 F. 3d 881, 884 (10th Cir. 2005).

In general, the scope of FTCA litigation cannot be expanded by adding claims not included in the administrative claim. *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011 (7th Cir. 1991). An administrative claim need not put forth legal theories in order to satisfy § 2675(a). *See Bush v. U.S.*, 703 F.2d 491, 494 (11th Cir. 1983); *Brown v. U.S.,* 838 F.2d 1157, 1160 (11th Cir. 1988) (notice requirement does not require claimant to enumerate each theory of liability in the claim). However, a plaintiff cannot "present one claim to the agency and then maintain suit on the basis of a different set of facts." *Dynamic Image Technologies, Inc. v. U.S.*, 221 F.3d 34 (1st Cir. 2000). Although multiple claims may be asserted on a single claim form, to be valid, "the form must give 'constructive notice' sufficient to warrant [government] investigation of each claim." *Haceesa v. U.S.,* 309 F.3d 722, 734 (10th Cir. 2002). The primary concern underlying adequate notice is the Government's ability to evaluate claims and facilitate

settlement. *See Bradley,* 951 F.2d at 271 n.3 (10th Cir. 1991) (congressional purposes of claim presentation procedures are "to ease court congestion and avoid unnecessary litigation, while making it possible for the government to expedite the fair settlement of tort claims asserted against the United States"); *see also Danowski v. U.S.,* 924 F.Supp. 661, 667-668 (D.N.J. 1996) (courts "routinely dismiss actions brought on legal theories not presented to the relevant federal agency . . . .").

### III. Whether Plaintiff Provided Notice

Defendant contends that the SF-95 which Mrs. Dukert submitted to the DVA omitted two claims which were later included in Plaintiff's complaint: lack of informed consent regarding the care provided at the VA in Albuquerque, and Mrs. Dukert's claim for loss of consortium, both of which were included later in her complaint. *See Compl.,* ¶¶ 13 and 16. In one of the boxes in the SF-95 submitted to the Government, Plaintiff described the basis of the claim as follows:

> On 2/15/13, my husband Clare Dukert underwent a colonoscopy w/ (sic) biopsy at the VA hospital in Albuquerque, NM at the same site that Mr. Dukert had undergone no less than 6 biopsies w/in (sic) a 3 year period. Dr. Story's procedure resulted in a perforated bowel. On 2/17/13, Mr. Dukert developed the acute signs and symptoms of septic shock. Mr. Dukert was transferred to Del Sol Medical Center in El Paso, TX on 2/17/13, where he underwent emergency surgery. Due to multiple complications and surgeries, my husband died on 8/22/13.

Exhibit A, Box 8.

A. <u>Informed Consent</u>

Tenth Circuit precedent follows the majority of circuit court decisions on the standard for exhausting an informed consent claim under the FTCA, with the majority including the Seventh,

Ninth and Eleventh circuits.[1] *See Staggs v. U.S. ex rel.,* 425 F.3d 881 (10th Cir. 2005). Under this standard, the claim's language must serve "due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." *Id.* at 884. This notice is based on an assertion of underlying facts and circumstances rather than the exact grounds on which the claimant seeks to hold the Government liable. *Id.* at 885. The claimant in *Staggs* filed an administrative claim for medical malpractice with the Department of Health and Human Services ("DHHS"), alleging that the hospital had negligently treated her pregnancy and labor, resulting in brain damage to the infant. *Staggs* affirmed the district court's conclusion that the claimant had not presented facts and circumstances sufficient to raise the possibility of informed consent, finding that the agency could have reasonably concluded that a claim for informed consent was not intended or that an investigation into lack of informed consent was unnecessary.

As Chief Judge Posner held in *Murrey v. U.S.,* a plaintiff who is basing a suit on lack of informed consent is "required to include, or at least allude to, the issue of informed consent in the administrative claim." 73 F.3d 1448, 1451 (7th Cir. 1996) (the SF-95 requires a detailed statement of facts, but does not require a statement of legal theories). Judge Posner noted that unlike a civil complaint which could be amended under the "relation back" provision in Fed.R.Civ.P. 15(c)(1), the penalty for an inadequate administrative claim is a lack of jurisdiction over the lawsuit. *Id.* This rigorous standard ensures exhaustion of administrative remedies before bringing suit against the Government. In *Murrey,* Judge Posner contrasted the SF-95 form with a civil complaint:

> Standard Form 95 resembles a civil complaint in not requiring a statement of legal theories, but differs in requiring a detailed statement of facts. It is in this respect

---

[1] The Fifth Circuit is in the distinct minority, holding that a claim of failure to obtain informed consent is implicit when the administrative claim alleges medical negligence and investigation would turn up the facts showing that failure. *Frantz v. United States*, 29 F.3d 222 (5th Cir. 1994).

6

more demanding, more "formal" if you will, than the civil rules—a throwback, perhaps, to the era of "fact pleading" that preceded the adoption of those rules. But as no statement of legal theories is required, only facts plus a demand for money, the claim encompasses any cause of action fairly implicit in the facts.

*Murrey,* 73 F.3d 1448, 1451 (7th Cir. 1996). Thus, the adequacy of an administrative claim is afforded "greater liberality" with an inference that is allowed based on facts which must nevertheless be contained in the claim that is presented to the agency. In other words, the administrative claim must narrate facts "from which a legally trained reader would infer a failure to obtain informed consent." *Id.* (citing *Bush v. U.S.,* 703 F.2d 491, 494 (11th Cir. 1983)); *see also Goodman v. U.S.,* 298 F.3d 1048, 1055 (9th Cir. 2002).[2]

The SF-95 in this case appears to be silent on the issue of informed consent, as compared to the allegations contained in the complaint:

- failed to provide Mr. Dukert with surgical options for the treatment of his residual sigmoid lesion prior to the colonoscopy on February 15, 2013;

- failed to refer Mr. Dukert for surgical consultation for an alternative to colonoscopic polypectomy prior to the February 15, 2013 procedure;

- failed to appreciate and explain to Mr. Dukert the risk of perforation in a colonoscopic excision in a location where he had undergone multiple prior excisions, resulting in lack of informed consent;

- failed to follow the accepted standard of care for the treatment and surveillance of residual polyps by performing a polypectomy in the same location after multiple prior attempts, and

- failed to adequately and appropriately treat Mr. Dukert's recurrent sigmoid lesion on February 15, 2013 by neglecting to refer him to primary surgical resection.

Compl., ¶¶13(c-g). These allegations clearly raise various and distinct theories of negligence that attack the ways medical providers communicated with Mr. Dukert regarding his medical care, or otherwise failed to do so, when they performed the colonoscopy on February 15, 2013.

---

[2] Plaintiff misapprehends the standard followed by the Tenth Circuit, stating that it "requires the explicit mention of all potential claims in the SF 95. . . ."). Doc. 51 at 5. This is not the standard espoused by the Seventh, Ninth, Tenth and Eleventh Circuits, which follow the "legally trained reader" standard described above.

The relevant question here is whether a "legally trained reader" can infer from the assertions in the SF-95 a claim for failure to obtain informed consent. The language in the SF-95 describes Mr. Dukert's biopsies and surgeries, and the adverse results which ended in his death, but it contains no facts from which one could infer notice of a claim for injuries based on a lack of informed consent.

Plaintiff argues that, unlike the situation in *Staggs,* the DVA's regional counsel *had* concluded that the informed consent issue was intended by Mrs. Dukert, based on the agency's March 20, 2014 letter to Plaintiff denying the claim. Ex. 3. The letter mentions circumstances related to informed consent in its discussion of the care provided to Mr. Dukert:

> Mr. Dukert told three different VA physicians he did not want surgery and wanted to do everything possible to avoid another abdominal surgery. From November 2012 to February 2013, each of these three **Gastroenterologists has a clear memory of explaining the risks proceeding with surveillance by colonoscopy rather than surgery to remove the polyp(s)**. Nevertheless, the medical chart documents that even after Mr. Dukert's February 2013 colonoscopy, he said he wanted to have one more colonoscopy before he would agree to proceed to surgery. VA warned Mr. Dukert of the risks, but understood and honored his right to make this decision for himself . . .
>
> Our medical reviewer found VA provided appropriate care. Our Gastroenterology expert opined that by advising this patient of the benefits and risks of surgery versus colonoscopy prior to the procedures, and **obtaining appropriate informed consent,** VA met the standard of care.

Ex. 3 (Doc. 51-3) at 1-2 (emphasis added).

Plaintiff contends that the letter's discussion of informed consent is evidence that the agency must have concluded that informed consent was intended by Plaintiff's claims. However, the FTCA's language makes it clear that the burden is not on the agency to include all possible claims in an investigation, but on a claimant to apprise the agency of all the claims asserted. *See McNeil v. U.S.,* 508 U.S. 106 (1993) (quoting 28 U.S.C. §2675(a)). An agency might decide to go beyond the facts presented in a SF-95 in an exercise of thoroughness, but this

8

does not relieve a claimant of her burden.  The test is "whether the claim put the Government on notice of the cause of action, not whether the Government knew about the cause of action." *See Ramirez-Carlo v. U.S.,* 496 F.3d 41 (1st Cir. 2007) (administrative claim did not put VA on notice of second condition, a coronary condition, even though VA "went beyond the facts stated in the first claim").

   The fact that the VA medical reviewer found that VA physicians provided appropriate care, including that the providers obtained appropriate consent from Mr. Dukert before the colonoscopy, does not alter the fact that Plaintiff never stated facts in her SF-95 to support a claim for inadequate informed consent.  The agency's inclusion of the issue in its overview does not necessarily mean that the agency conducted a full investigation into a claim which they understood was being asserted by Plaintiff.  Plaintiff also reads too much into the DVA's request for additional information, which appears to be a standard "acknowledgement letter" sent out to a claimant upon receipt of an administrative claim.  As Defendant notes, the list of requested documentation closely tracks the eight-part list of evidence and information to be submitted to an agency in an administrative claim involving a death set forth in the relevant regulations.  *See* 28 C.F.R. §14.4(a).  The agency's request for this information cannot possibly be construed as a substitute for notice which the claimant is obligated to provide.

   In this case, notice of a claim regarding informed consent was not provided.  The SF-95 form does not contain any allegations regarding the lack of informed consent or any facts that arguably would place the agency on notice that Plaintiff is alleging a medical provider's failure to inform Mr. or Mrs. Dukert about the nature of the colonoscopy, the possible risks associated with it, any viable options available to the patient, if any existed, or the possible complications after the gastrointestinal procedure.  *See Staggs*, 425 F. 3d at 884-85 (nothing in plaintiff's

administrative claim suggests that plaintiff consented to a course of treatment or remained on such a course without being informed of her options and the risks"); *cmp. Bethel v. U.S. ex. rel. Veterans Admin. Med. Ctr. of Denver, Colorado*, 495 F. Supp. 2d 1121, 1124 (D. Colo. 2007) (administrative claim which focused on actions relating to plaintiff's treatment during surgical procedure are "simply not those that would put the government on notice to investigate the [agency's] failures in credentialing [the physician] or monitoring her competency"). The situation in *Murrey,* the Seventh Circuit case discussed above, is a good example of adequate notice for an informed consent claim. The claimant in *Murrey* included in the administrative claim assertions that her husband, who died as a result of an operation to remove his prostate gland, was "extremely fearful" of the surgery, but VA physicians "assured him and his family that surgery was the only available therapy, and that it would extend his life by 15 years." 73 F.3d at 1452. As Judge Posner noted, "[t]his is a statement of the essential facts underlying a claim of failure to obtain informed consent." *Id*. In the context of an administrative claim, even though a claimant need not express legal theories, nevertheless, facts and circumstances must be presented from which "a legally trained reader would infer a failure to obtain informed consent." *Murrey,* 73 F.3d at 1451. No such facts were included in Plaintiff's SF-95 and as a result, that claim was never administratively exhausted.

B.  <u>Loss of Consortium</u>

Defendant seeks dismissal of Plaintiff's loss of consortium claim included in the complaint because it was not presented in the administrative claim, and is therefore not exhausted as well. Defendant contends that the administrative claim does not list or describe any of Plaintiff's alleged injuries for this claim, nor does it allege any personal injury money damages even though the SF-95 has a specific box in which to do so. *See* Ex. A, Box 12b.

Plaintiff claimed an amount of "$5,000,000" in Box 12c for "Wrongful Death," but there is no amount listed in Box 12b for "Personal Injury." Box 10 provides a space directing a claimant to:

> STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Plaintiff filled in the space in Box 10 with: "Death from septic shock resulting from a perforated bowel." There are no facts on the form which could be construed to support an individual claim by Mrs. Dukert for loss of consortium, nor did Plaintiff ever file an amendment to her SF-95 prior to the denial of her administrative claim. Ex. B (Romaneski Decl.), ¶ 15. On receipt of Mrs. Dukert's administrative tort claim, the DVA sent a letter to Mrs. Dukert requesting certain documents and information, including Mr. Dukert's income tax returns for the past three years, proof of Mrs. Dukert's authority to act as Mr. Dukert's representative and a copy of Mr. Dukert's marriage license and any relevant divorce decree. Exs. 1 & 2 (Doc. 51-1).[3] The agency also invited Plaintiff's counsel to make Mrs. Dukert available for a telephone interview, which apparently took place.

Plaintiff argues that there is no need to assert a separate claim based on loss of consortium because in New Mexico, loss of consortium claims are derivative claims and here, the facts and circumstances that form the basis of claims of Mr. Dukert's estate are identical to those that form the basis for Mrs. Dukert's individual claim for loss of consortium. *Brenneman v. Bd. of Regents of the Univ. of N.M.,* 135 N.M.68, 84 (Ct.App. 2004). Plaintiff also points out that loss of consortium claims are premised on a very close relationship between the injured party and another person and on the foreseeability of that relationship and that Mrs. Dukert provided evidence of this close familial relationship when she provided the DVA with a copy of

---

[3] The DVA sent out a letter requesting this information on October 15, 2013, about two weeks after receiving the tort claim, and then another letter requesting the same information on February 14, 2014. The February letter noted that the information had still not been provided to the agency, but acknowledged that this was probably because the address to which the earlier letter had been sent was not a current address.

11

the certificate of her marriage to Mr. Dukert and other documentation such as the retainer agreement for his individual claims and documentation of his funeral and burial expenses. *See Fitzjerrell v. City of Gallup ex rel. Gallup Police Dept.,* 134 N.M. 492, 496 (Ct.App. 2003) ("the duty of a potential tortfeasor to a surviving spouse arises from the foreseeability of damage to the close relationship typically shared by husband and wife"). Plaintiff adds that information from the telephone interview which Mrs. Dukert gave the DVA was used by the agency in its investigation of Mrs. Dukert's claims, and this information would have included facts and circumstances to support a loss of consortium claim.

None of these contentions have any merit. Proof of the close familial relationship required for a loss of consortium claim has nothing to do with the presentation of facts supporting such a claim. *See, e.g., Wilson v. U.S.*, 1992 WL 370618, at *4 (D.Kan.,1992) (government not afforded adequate notice when administrative complaint did not contain evidence to support elements in new cause of action). Also, even assuming that during the agency's telephone interview, Mrs. Dukert informed the agency that she was asserting a loss of consortium claim as well as the wrongful death claim (although there is no support for this assumption at all), Mrs. Dukert's interview does not serve as a substitute for the notice required under 28 U.S.C. §2675.

Plaintiff's statement of black letter law for loss of consortium claims is accurate, but none of the cases cited by Plaintiff holds or even suggests that a loss of consortium claim need not be separately alleged. The opposite is true. For example, in *Pipkin v. U.S. Postal Service,* the postal employee's wife never asserted any administrative claim on her own behalf, nor did the postal employee specifically assert loss of consortium in his grievance filed with the Postal Service. 951 F.2d 272 (10th Cir. 1991). The Tenth Circuit held that the wife's failure to exhaust this

claim under her administrative remedies barred the claim.  *Id.* at 273.  Under Tenth Circuit law, Mrs. Duker's loss of consortium claim must be dismissed.  Because Mrs. Dukert did not present an administrative tort claim on a loss of consortium theory prior to filing this lawsuit under the provisions of the FTCA, subject matter jurisdiction does not exist over this claim.

The Court acknowledges that as to Plaintiff's loss of consortium claim, the results seem rather harsh, considering the circumstances leading up to Plaintiff's filing of the civil complaint.  In her administrative claim to the DVA, Mrs. Dukert clearly asserted that her husband's death was wrongfully caused by Defendant's negligence which would, for a layperson going through the administrative exhaustion process, generally encompass the loss that person has experienced as a result of the death.

The Court recognizes that recovery by a spouse for emotional suffering due to loss of consortium is separate property under New Mexico law.  *Romero v. Byers,* 116 N.M. 422, 426 (1994).  Conversely, damages for a wrongful death action are separate from those damages resulting from a loss of consortium claim.  *Id.* at 427 (purpose of New Mexico's Wrongful Death Act is to compensate statutory beneficiaries) (citing NMSA §41-2-1 to -4).  While of course the Government could not know at the time of the administrative exhaustion process that Mrs. Dukert would be filing a lawsuit both as an individual as well as her husband's Personal Representative, it should not have come as a surprise that a wife asserting administrative claims for her husband's wrongful death would also seek damages for her own emotional loss from that death.  By comparison, a layperson navigating the administrative process would not necessarily know how to distinguish the facts providing the basis for her own loss of consortium claim from the facts specific to a wrongful death claim, and by the time this distinction became clear (either

by advice of counsel or through opposing counsel's motion to dismiss as happened here), it would be too late.

Nonetheless, the Court's ruling on this claim must follow Tenth Circuit precedent, which it does, and as a result, Mrs. Dukert's loss of consortium claim must be dismissed.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiff's administrative claim asserts facts and circumstances concerning only a breach of the standard of care in the gastrointestinal procedure itself performed on Mr. Dukert, and this claim may proceed. However, the SF-95 submitted by Mrs. Dukert includes no facts which would infer a claim regarding lack of informed consent and provide notice to the DVA of this claim and as a result, the claim has not been administratively exhausted. In addition, Plaintiff has not presented any facts or circumstances in the administrative claim which raise a loss of consortium claim, and this claim has not been exhausted. The jurisdictional prerequisites within the FTCA to bring a lawsuit based on inadequate informed consent and spousal loss of consortium have not been met, and based upon the law of the Tenth Circuit and the Supreme Court, these claims must be dismissed for lack of subject matter jurisdiction.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiff's Claims Not Raised in her Tort Claims Notice for Lack of Jurisdiction **(Doc. 48)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order in that all of Plaintiff's claims pertaining to informed consent or lack thereof, and of loss of consortium, shall be dismissed for lack of subject matter jurisdiction.

_____
UNITED STATES DISTRICT JUDGE